# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ANDREA BEARD,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:20-cv-00463-RDP |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Andrea Beard brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed in part and remanded in part.

**I.      Proceedings Below**

Plaintiff filed her application for disability and DIB on September 28, 2015 in which she alleged that her period of disability began on August 1, 2011[1]. (Tr. 106, 278-289). Plaintiff's application was initially denied by the Social Security Administration on December 18, 2015. (Tr. 106, 130). Plaintiff then requested and received a video hearing before Administrative Law Judge George W. Merchant ("ALJ") on December 11, 2017. (Tr. 60-90, 139-140). Plaintiff, her attorney John Pennington, and Vocational Expert ("VE") David Head were present at the hearing. (Tr. 60).

---

[1] Plaintiff would later amend her alleged onset of disability date to March 31, 2014. (Tr. 64).

In his decision dated March 6, 2018, the ALJ determined that Plaintiff had not been under a disability within the meaning of sections 216(i) and 223(d) of the Act since March 31, 2014, the alleged onset of disability date. (Tr. 111-121). Plaintiff then filed for review of the ALJ's decision by the Appeals Council. (Tr. 166-168). The Appeals Council granted Plaintiff's request for review under the substantial evidence provision of the Social Security Administration regulations. 20 C.F.R. § 404.970. (Tr. 127). Upon review, on August 10, 2018 the Appeals Council vacated the ALJ's original decision and remanded the case to the ALJ under the authority of 20 C.F.R. § 404.977. (Tr. 127). Following this order, Plaintiff received a video hearing before the ALJ on May 6, 2019. (Tr. 43-59). Plaintiff, her attorney John Pennington, and VE Jewell Euto were present at the hearing. (Tr. 43).

In his second decision dated July 19, 2019, the ALJ again determined that Plaintiff had not been under a disability within the meaning of sections 216(i) and 223(d) of the Act since March 31, 2014, the alleged onset of disability date. (Tr. 20-32). After the Appeals Council denied Plaintiff's second request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1-3).

Plaintiff was 37 years old at the time of the May 6, 2019 hearing. (Tr. 278). Plaintiff received a GED and completed three years of college. (Tr. 283). Plaintiff has previous work experience as a baker, a cake decorator, a cashier, a cook, a hostess, and a pastry chef. (Tr. 283). Plaintiff contends she is unable to work due to status post Chiari malformation repair and residual problems from that, status post left knee arthroscopic surgery, major depressive disorder, cognitive disorder, and carpal tunnel syndrome in her dominant hand. (Tr. 45, 282).

During her alleged period of disability, Plaintiff received relevant medical care from Brookwood Neurosurgery and Spine, Brookwood Medical Center, Neurology Specialists of Alabama, the Kirklin Clinic at UAB, Powell and Jones Orthopedics Center, and Northeast Orthopedic Clinic. (Tr. 386-441, 448-453, 465-500, 505-519).

On January 27, 2011, Plaintiff received an MRI at Cerner Imaging after complaining of headaches. Dr. Rehder Dirk, the attending radiologist, found Chiari I malformation. (Tr. 381). On June 16, 2011, Plaintiff saw Dr. Robert L. Pearlman. Dr. Pearlman noted that Plaintiff's chief complaint was headaches. He described her headaches as "chronic." (Tr. 438). On July 11, 2011, Dr. Pearlman again reviewed Plaintiff's MRI and referred her to a neurosurgeon. (Tr. 434).

On July 20, 2011, Plaintiff went to Brookwood Neurosurgery and Spine clinic where she was seen by Dr. Blake E. Pearson. Plaintiff primarily complained of headaches, claiming they first began two years prior to her visit. At this time, Plaintiff was being prescribed Neurontin, Allegra, Synthroid, and Biotin. (Tr. 395-396). On August 1, 2011, Plaintiff was admitted to Brookwood Medical Center for a posterior fossa craniology, which is a Chiari decompression surgery. (Tr. 384, 388). On September 13, 2011, six weeks after her surgery, Plaintiff saw Dr. Pearson for a follow up. (Tr. 408). During this visit Dr. Pearson noted that Plaintiff's headaches were better, although they were not gone completely. (*Id.*). Dr. Pearson released Plaintiff to work part-time with a maximum lifting weight of 20 pounds for one week, followed by full time work with a maximum weight limit of 40 pounds for two weeks, and released to full time work after that. (*Id.*).

On October 10, 2011, Plaintiff saw Dr. Pearlman. (Tr. 433). Dr. Pearlman noted that Plaintiff's headaches had completely subsided following her Chiari surgery, and therefore decreased her dosage of Neurontin. (*Id.*). On December 13, 2011, Plaintiff saw Dr. Pearson again in follow up from her surgery. (Tr. 397). Dr. Pearson recorded that Plaintiff's MRI showed a

3

normal appearance for a postoperative Chiari decompression, and that her headaches had improved. (*Id.*).

On July 11, 2012, Dr. Pearlman noted that Plaintiff's headaches had increased in frequency. (Tr. 430). Dr. Pearlman kept Plaintiff on her Neurotin prescription but also prescribed Effexor. (*Id.*). When Dr. Pearlman saw Plaintiff again for a follow up on November 12, 2012, her headaches were manageable. Plaintiff reported she had stopped taking her Effexor medication and Dr. Pearlman prescribed Midrin. (*Id.*). However, on September 2, 2015, Plaintiff claimed that her headaches had increased in severity and were now making her work as a baker increasingly difficult. (Tr. 448).

On October 8, 2015, Plaintiff noted severe physical and cognitive limitations in her Function Report, including not being able to stand for over 20 minutes, and sometimes being unable to remember her husband's name. (Tr. 311-319). On her claimant contact form dated October 28, 2015, Plaintiff reported that she was working one to three days per week, had not had a recent MRI, and did not have any further medical appointments scheduled at that time. (Tr. 320-321). Disability Determination Services (DDS) referred Plaintiff to Dr. Jack L. Bentley for a Mental Examination on December 2, 2015. (Tr. 462). At this examination, Dr. Bentley determined that Plaintiff suffers from constant moderate to severe migraine headaches and is unable to lift over five to ten pounds. (Tr. 462). Plaintiff reported that she was employed as a cake decorator, but was only able to work between seven and fourteen hours per week due to her headaches and fatigue. (Tr. 463). Dr. Bentley found no evidence of symptom exaggeration, and stated that Plaintiff's impairment level for simple tasks would "fall in the marked to moderate range." (Tr. 464). On December 18, 2015, Plaintiff was evaluated by State Agency physician Dr. Robert Estock. Dr. Estock found Plaintiff statements regarding the severity of her symptoms to be partially

credible. (Tr. 97). He concluded that Plaintiff "would benefit from a flexible schedule and would be expected to miss 1-2 days of work per month due to mental condition." (Tr. 101).

Plaintiff did not see Dr. Pearlman for treatment of her headaches from October 18, 2016 to February 6, 2018. (Tr. 465-470, 517-519). On February 23, 2017, Dr. Pearlman referred Plaintiff to Dr. Richard W. Waguespack at the UAB Kirklin Clinic. (Tr. 472). Plaintiff presented with complaints of increasing dizziness. Dr. Waguespack ordered an MRI and found no abnormality, aside from a small collection of fluid "posterior to the decompression site." (Tr. 472-473). He recommended a videonystagmography test, which Plaintiff never received. There is no record of a follow up. (Tr. 475).

On her visit to Dr. Pearlman dated February 6, 2018, Plaintiff reported that she experienced migraines at least 15 days out of the month, and that each one lasted at least four hours. (Tr. 517). On February 26, 2019, Dr. Pearlman noted in a questionnaire that Plaintiff's pain would be expected to increase if she were to work at a job requiring her to sit or stand for prolonged periods of time during an eight hour work day. (Tr. 501). He also stated that her increase in pain would cause "serious distraction" from tasks and may result in failure to complete job tasks in a timely manner. (Tr. 502). Dr. Pearlman did not believe Plaintiff was exaggerating her pain. (Tr. 503). In regard to future work, Dr. Pearlman stated that Plaintiff would need additional breaks and could be expected to miss more than two days of work each month. (Tr. 503-504). On February 26, 2019, Dr. Pearlman noted that Plaintiff was taking Aimovig injections for her headaches, and that her headaches were "still severe but there are far fewer of them this time." (Tr. 505).

Additionally, Plaintiff has a history of knee surgery. (Tr. 478). Plaintiff had a right knee meniscus and an ACL graft in 2003, and a right knee ACL transplant in 2007. (*Id*.). Plaintiff saw Dr. Thomas Powell at Powell and Jones Orthopedic Center on January 23, 2017, after she

reportedly fell at home on December 27, 2016. (Tr. 478). An MRI revealed a sprained ACL and Dr. Powell performed an arthroscopy to her left knee at Brookwood Medical Center on January 31, 2017. (Tr. 476, 478). Plaintiff began physical therapy and reported on September 18, 2017 that her twice a week therapy was proving to be effective. She further reported using a stationary bike five times a week. (Tr. 489).

Plaintiff also alleges disability due to cognitive disorder and major depressive disorder. In a Mental Examination on December 2, 2015, Dr. Jack L. Bentley diagnosed Plaintiff with cognitive disorder. (Tr. 463). On October 18, 2016, Plaintiff reported to Dr. Pearlman that she was crying without provocation. Dr. Pearlman diagnosed Plaintiff with major depressive disorder and prescribed her Lexapro. (Tr. 468-470). There is no other evidence for treatment of depression.

Finally, Plaintiff alleges disability due to carpal tunnel syndrome. On November 14, 2018 Dr. Pearlman diagnosed Plaintiff with carpal tunnel syndrome after reviewing her EMG nerve conduction. (Tr. 508). Dr. Pearlman prescribed Plaintiff to wear a wrist splint at night for the following two months. (*Id.*). On February 26, 2019, Dr. Pearlman noted that Plaintiff's hands were "doing fairly well with using the splints at night." (Tr. 505).

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 31, 2014, her alleged onset date of disability, and meets the insured status requirements of

7

the Act through December 31, 2021. (Tr. 22-23). 20 C.F.R. § 404.1571 *et seq*. The ALJ further determined that Plaintiff has the following severe impairments: status post Chiari malformation repair, status post left knee arthroscopic surgery, major depressive disorder, and cognitive disorder. (Tr. 23). However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 24).

The ALJ found that Plaintiff is unable to perform any past relevant work. 20 C.F.R. § 404.1565. (Tr. 31). After considering the record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can: understand, remember, and carry out simple instructions; make occasional work decisions; sustain occasional interactions with supervisors, coworkers, and members of the public; can adjust to infrequent or less than occasional changes in the workplace; maintain focus on simple tasks for two-hour periods in order to complete an eight-hour workday with customary mid-morning, lunch, and afternoon breaks; can occasionally make work-related decisions; and sustain occasional interactions with others in the workplace. (Tr. 26). Finally, taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. 20 C.F.R. §§ 404.1569 and 404.1569(a). (Tr. 31).

### III.   Plaintiff's Argument for Reversal

Plaintiff presents three arguments for reversing the decision of the ALJ. First, she contends that under step two of the sequential evaluation, the ALJ implicitly found that her undisputed chronic migraine headaches was not a severe impairment, even though this was a major part of her alleged disability. (Doc. # 16 at 3). Second, Plaintiff argues that the ALJ failed to give appropriate

weight to the opinions of her treating physician and the State Agency physician. (Doc. # 16 at 3). Finally, Plaintiff asserts that the ALJ improperly rejected her subjective testimony, and in doing so, failed to follow Social Security Ruling 16-3p regarding the assessment of a claimant's subjective testimony, as well as the well settled law of this jurisdiction. (Doc. # 16 at 3).

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.     Discussion

Plaintiff's first argument centers around step two of the disability analysis. She argues that her migraines qualify as a severe impairment, and that in failing to label them as such, the ALJ gave Plaintiff a defective RFC. Plaintiff's second argument deals with the opinions of her treating physician, Dr. Pearlman, and State Agency physician, Dr. Estock, and she contends that the ALJ's evaluation of these opinions is not supported by substantial evidence. Plaintiff's third argument relates to Social Security Ruling 16-3p. Plaintiff asserts that the ALJ violated this ruling by improperly rejecting her subjective testimony. The court addresses each argument in turn.

> 1. **Whether the ALJ Erred Under Step Two of the Sequential Evaluation, and if so, Whether the Error Resulted in an Incorrect RFC Determination**

Plaintiff agrees with the ALJ's finding to the extent the ALJ found she suffers from the following severe impairments: status post Chiari malformation repair, status post left knee arthroscopic surgery, major depressive disorder, and cognitive disorder. (Tr. 23). However, Plaintiff argues that the ALJ erred at step two of the sequential evaluation because he did not include her chronic migraines as a severe impairment under step two. (Doc #10 at 3). Plaintiff argues that because the ALJ overlooked her migraines at step two of the sequential evaluation, the RFC determination is in error. (Doc. #10 at 6).

While the ALJ did not list Plaintiff's migraines among her severe impairments at step two, he did find her status post Chiari malformation repair, status post left knee arthroscopic surgery, major depressive disorder, and cognitive disorder to be severe. (Tr. 23). In considering this issue, it is important to note that "the finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe' is enough to satisfy step two." *Hearn v. Comm'r Soc. Sec. Admin.*, 6199 F. App'x 892, 895 (11th Cir. 2015) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Therefore, by

10

identifying Plaintiff's status post Chiari malformation repair, status post left knee arthroscopic surgery, major depressive disorder, and cognitive disorder as severe impairments, the ALJ sufficiently fulfilled step two of the sequential evaluation.

In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including ones that are not "severe." 20 C.F.R. §§ 404.1520(e) and 404.1545. In making an RFC determination at step two of the sequential evaluation, an ALJ considers all of the claimant's recorded and medically determinable impairments, both severe and not severe. "While the ALJ did not need to determine whether every alleged impairment was "severe," he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

After consideration of the record as a whole, it is evident to the court that the ALJ did consider all of Plaintiff's medically determinable impairments in determining her RFC, including her migraines. (Tr. 26-30). In determining a claimant's RFC, the ALJ considers medical and non-medical sources, measuring the claimant's subjective testimony against the full record. 20 C.F.R. § 404.1529 (c)(2)-(4). In considering Plaintiff's migraines, the ALJ found inconsistencies between Plaintiff's complaints and the record evidence. (Doc #11 at 6). The court has reviewed the record and finds there is substantial evidence to support this finding.

### 2. Whether the ALJ Failed to Give Appropriate Weight to the Opinions of the Treating Physician and the State Agency Physician

In assessing the various medical opinions, an ALJ evaluates medical opinions together with all the relevant evidence in the record. 20 C.F.R. § 404.1527 (b). A treating physician's opinion is typically given the most weight. Generally, "the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary." *MacGregor*, 786

11

F.2d at 1053; *Broughton v. Heckler*, 776 F.2d 960, 961-962 (11th Cir. 1985); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

While an ALJ will consider the opinions of medical sources regarding a claimant's RFC, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). When allocating weight to a medical opinion, an ALJ will give greater weight to those opinions which present "relevant evidence to support a medical opinion, particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3). "Generally, the more consistent[2] a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

In evaluating the medical opinions in the record, historically it was well established[3] that "[t]he testimony of a treating physician [or other treating medical source] must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *accord*, *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991). Good cause may exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-281 (11th Cir. 1987). *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause may also exist "where the doctors'

---

[2] Evidence is considered inconsistent "when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1520 (b).

[3] The court acknowledges that for claims filed on or after March 27, 2017, the revised regulations do not permit the reviewing ALJ to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). However, as both parties agree that Plaintiff filed for disability and DIB on September 28, 2015, 20 C.F.R. § 404.1527 is the relevant regulation in this case. This regulation states in pertinent part that "[g]enerally, [the ALJ will] give more weight to medical opinions from [the claimant's] treating sources…" 20 C.F.R. § 404.1527.

opinions were conclusory or inconsistent with their own medical records." See *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-1533 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In evaluating medical opinions, the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor*, 786 F.2d at 1053. Should the ALJ deny controlling weight to a claimant's treating physician, this denial must be supported by substantial evidence. *See MacGregor*, 786 F.2d at 1054; *see also*, *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In determining whether "substantial evidence" exists in social security disability cases, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. 42 U.S.C. § 405(g). "We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Furthermore, where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even if his ultimate conclusion is arguably supported by substantial evidence. *Martone*, 70 F.Supp. 2d at 148. If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F.Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

Here, Plaintiff argues that the ALJ's decision to give little weight to Dr. Pearlman's opinion and some weight to Dr. Estock's opinion was not supported by substantial evidence. Plaintiff

argues that the ALJ improperly substituted his opinion for the opinion of Dr. Pearlman. Of course, it is well established that an ALJ cannot substitute his or her judgement for that of a medical professional. "While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978).

In his decision, the ALJ gave little weight to Dr. Pearlman's opinion "in consideration of the treatment [Plaintiff] ha[d] actually received from Dr. Pearlman and the minimal findings from her most recent MRI brain scan." (Tr. 29). Plaintiff argues the ALJ improperly substituted his own opinion by implying that "a person with chronic migraines would have abnormal findings on an MRI" and that "Dr. Pearlman would have treated [Plaintiff] differently if her headaches were as bad as Dr. Pearlman stated." (Doc #10 at 11, 12).

The ALJ determined that Plaintiff did not fulfill her duty to provide the court with "objective clinic findings, beyond her own subjective complaints, to support her claim of disability due to her chronic migraines." (Doc. #11 at 14). And, the record does not indicate that Plaintiff's migraines resulted in abnormal MRI findings. However, some disabling impairments cannot be objectively proven in a laboratory test. "Neither the Social Security Administration nor the federal courts, require that an impairment be proven through objective laboratory tests." *Thompson v. Barnhart*, 493 F.Supp. 2d 1206, 1215 (S.D. Ala. 2007). (Citing *Ortega v. Chater*, 933 F.Supp. 1071, 1075 (S.D. Fla. 1996)). Regarding migraines specifically,[4] "present-day laboratory tests cannot prove the existence of migraine headaches." *Ortega*, 933 F.Supp. at 1075 (S.D. Fla. 1996).

---

[4] Additionally, "[b]ecause there is no test for migraine headaches, 'when presented with documented allegations of symptoms which are 'entirely consistent with the symptomatology' for evaluating [the claimed disorder], the Secretary cannot rely on the ALJ's rejection of the claimant's testimony based on the mere absence of objective evidence.'" *Fragale v. Chater*, 916 F.Supp. 249, 1996 WL 79907, at *5 (W.D.N.Y. Feb. 21, 1996). *Federman v. Chater*, No. 95 CIV. 2892 (LLS), 1996 WL 107291, at *2 (S.D.N.Y. Mar. 11, 1996).

As there is no indication in the record that Plaintiff's migraines would result in abnormal MRI findings, the court concludes the ALJ improperly inserted his own incorrect assumption that they should.

Additionally, the ALJ assigned little weight to Dr. Pearlman's medical opinion in light of his conservative treatment of Plaintiff. However, conservative treatment alone is not a sufficient cause for discounting a treating physician's opinion. "Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen. *See, e.g., Shaw*, 221 F.3d at 134 (district court erred in ruling that the treating physician's 'recommend[ation of] only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs—[w]as substantial evidence that [the claimant] was not physically disabled'). The ALJ and the judge may not 'impose [ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.' *Id.* at 134-35 (internal quotation marks omitted); *see also id.* at 134." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).  While Dr. Pearlman did not recommend additional surgery, he consistently saw Plaintiff for her headaches from 2011-2019, aside from October 18, 2016 to February 6, 2018.  (Tr. 438, 465-470, 505, 517-519). The record also shows that Plaintiff occasionally complained of dizziness, lightheadedness, occasional black outs, and insomnia. (Tr. 429, 436, 472). As migraines cannot be diagnosed with a laboratory test, doctors rely on symptoms such as these to diagnose migraines.[5]

---

[5] "Since present-day laboratory tests cannot prove the existence of migraine headaches, as is also the case with many psychiatric and psychological impairments, these medical signs are often the only means available to prove their existence." *Ortega v. Chater*, 933 F.Supp. 1071, 1075 (S.D. Fla. 1996) (citing *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 744 (10th Cir. 1993)).

15

Additionally, Dr. Estock's evaluation of Plaintiff affirmed Dr. Pearlman's predictions of Plaintiff's absenteeism. On December 18, 2015, Dr. Estock stated that Plaintiff, "would benefit from a flexible schedule and would be expected to miss one to two days of work per month." (Tr. 101). Dr. Estock did not provide details as to what kind of flexibilities Plaintiff would benefit from, but importantly his opinion (as the State Agency physician) does not contradict Dr. Pearlman's opinion as to how many days per month Plaintiff could be expected to miss work.

Nor was this error harmless. The VE testified at both hearings. So, the fact that inadequate weight was given to medical predictions about the frequency of Plaintiff's absenteeism (and, again, both Dr. Pearlman and Dr. Estock predicted that) necessarily had a substantial effect on the hearings' outcomes. On December 11, 2017, VE David Head testified that missing "two days a month would wipe someone out before they got to 20 work days." (Tr. 87). On May 6, 2019, VE Jewell Euto stated that "[a]t the unskilled level of work, once the individual exceeds one day per month of absenteeism on a consistent basis, it will preclude all work." (Tr. 56).

The court finds that the ALJ's evaluation of Dr. Pearlman's medical opinion was not supported by substantial evidence. However, a reviewing court "cannot reweigh the evidence or substitute our judgment for that of the Secretary." *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). It is the duty of the ALJ to fully develop the record.[6] *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information"). Therefore, this is a determination for the ALJ to make in the first instance. This case is due to be remanded for proper consideration of the evidence as it relates to

---

[6] Additionally, "for the ALJ to conclude that [Plaintiff] presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of h[er] treating physician, violates [the ALJ's] duty to develop the factual record, …." *See Schaal*, 134 F.3d at 505 ('[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.'" *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

16

Dr. Pearlman's medical opinion. In reconsidering this question, if the ALJ again discounts Dr. Pearlman's opinion, he "must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

### 3. Whether the ALJ Violated Social Security Ruling 16-3p by Improperly Rejecting the Subjective Testimony of Plaintiff

Regarding a claimant's testimony, subjective complaints are not enough to prove disability. Rather, these subjective complaints must be supported by the record as a whole. *Barnett v. Apfel*, 13 F.Supp. at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." *Id.* However, there are some impairments, like Plaintiff's migraines, which cannot be proven by clinical evidence such as laboratory tests. In this case, the ALJ considers other factors. "'If the claimant's testimony as to pain is not fully supported by clinical evidence, the ALJ must consider additional factors in his assessment.' *Urena-Perez v. Astrue*, 06 CIV. 2589 JGK/MHD, 2009 WL 1726217 (S.D.N.Y. Jan. 6, 2009) *report and recommendation adopted as modified*, 06 CIV. 2589(JGK), 2009 WL 1726212 (S.D.N.Y. June 18, 2009). These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi); 416.929(c)(3)(i)-(vi); *see also Ortiz v. Astrue*, 875 F.Supp. 2d 251 (S.D.N.Y. 2012)." *Norman v. Astrue*, 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012).

The ALJ found that while there is medical evidence indicating that Plaintiff suffered significant health problems, there is no "objective evidence to support the extraordinary levels of pain and resulting restrictions that she has alleged." (Doc. #11 at 17). The ALJ noted that Plaintiff alleged severe physical and cognitive limitations in her Function Report on October 8, 2015, including not being able to stand for over 20 minutes, and sometimes being unable to remember her husband's name. (Tr. 27, 311-319). However, as the ALJ pointed out, those assertions are inconsistent with the job she had at the time as a part-time cake decorator, a job at which she continued working for the next year. (Tr. 27, 320-321). Additionally, Plaintiff did not receive any treatment for her headaches from October 18, 2016 to February 6, 2018. (Tr. 465-470, 517-519). On September 18, 2017 Plaintiff reported using a stationary bike five times a week. (Tr. 489). The ALJ stated that this, "exceeds the extremely limited range of activities she alleged [she could perform] at the hearing." (Tr. 29).

When Plaintiff did return to Dr. Pearlman on February 6, 2018, she complained of headaches occurring more than fifteen days out of the month, and lasting more than four hours at a time. (Tr. 517). However, at that same visit Dr. Pearlman noted that Plaintiff's headaches were "not intractable, without status migrainosus." (Tr. 519). When Plaintiff saw Dr. Pearlman on August 14, 2018, he recorded that she "was doing well on Botox but could not afford it." He then prescribed injections of Aimovig instead of Botox. (Tr. 511). On November 14, 2018, Plaintiff reported that her headaches were "fairly stable" and Dr. Pearlman noted that she was doing well with the Aimovig injections. Plaintiff saw Dr. Pearlman again on February 26, 2019, and Dr. Pearlman noted that Plaintiff's headaches were "still severe but there are far fewer of them this time." (Tr. 505). The medical records show an improvement in Plaintiff's migraines, and do not support the extreme limitations Plaintiff alleges in her subjective testimony.

The ALJ sufficiently pointed to the inconsistency between Plaintiff's subjective testimony and the record evidence; therefore, substantial evidence[7] supports the ALJ's findings regarding Plaintiff's subjective testimony. "Where substantial evidence supports the ALJ's findings, the decision to discount subjective testimony may not be disturbed on court review." 42 U.S.C. § 405(g); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

### VI. Conclusion

The court finds the ALJ's evaluation of Plaintiff's migraines under step two of the sequential evaluation, as well as his evaluation of Plaintiff's subjective testimony, is supported by substantial evidence and the proper legal standards were applied in reaching those determinations. However, the court finds that substantial evidence does not support the ALJ's evaluation of the medical opinion of Plaintiff's treating physician. Therefore, the ALJ's final decision is due to be affirmed in part and remanded in part, with instructions for the ALJ to reevaluate the weight given Dr. Pearlman's opinion. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 6, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7] "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).